DENNIS JACOBS, Chief Judge,
concurring:
I concur in the result.
I.
I am unable to sign the majority opinion for several reasons. First, the case of First-Name-Unknown Last-Name-Unknown (“FNU LNU”) is the easiest of cases, in which the questions asked of her had bearing on the most routine issues of identity: her name, where she was born, her country of citizenship, the contact information of her friends and family, details about the city in Puerto Rico where she purported to live for over thirty years, etc. Moreover, the location and circumstances of her confinement were unremarkable.
After the 90-minute interview, the Customs and Border Patrol officers were unable even to' ascertain FNU LNU’s name. Indeed, if she was subjected to questioning at the airport until her name was known, she would be there still. So if she was being questioned (and detained) for 90 minutes, it is only because she declined to say who she is. This case therefore does not remotely present the occasion for a tour d’horizon of Miranda law, or for pages of tendentious analysis in which useful precedents of this Circuit are deconstructed. See Majority Op. at 148-53.
This case is important nonetheless because muddling up Miranda law in the context of questioning entrants at the border is very dangerous. The majority opinion unnecessarily complicates what should be a straightforward holding. Point II of this concurrence abstracts the holding from the surrounding commentary and dicta in the majority opinion. I do so for the benefit of future parties and panels of this Court.
II.
Our holding in United States v. Silva, 715 F.2d 43 (2d Cir.1983) was abrogated by both Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) and Stansbury v. California, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) to the limited extent that the subjective intentions of an officer should not be considered in the Miranda analysis. Otherwise, *156 Silva remains the law of this Circuit and guides our analysis here.
Silva: (1) rejected the proposition that “from the moment [the entrant] was directed to the secondary inspection area she was in a custodial environment,” 715 F.2d at 46 (internal quotation marks omitted); reiterated that “Miranda warnings need not be given to one detained at the border and subjected to a routine customs inquiry,” id.; and observed that “questions ... necessary to enforce immigration and customs regulations” generally will not require Miranda warnings, id. at 47. Unlike the Third Circuit in United States v. Kiam, 432 F.3d 524, 530 (3d Cir.2006), however, Silva refrained from adopting a bright-line exception to Miranda at the border and instead recognized Miranda’s limited application to non-routine customs inquiries. See Silva, 715 F.2d at 46-47.
Practically speaking, the most important factor in determining whether Miranda applies at our borders will often be the objective function of an inspector’s questions, not the custodial nature of the questioning.
Miranda warnings are not required in a routine secondary inspection when, as in this case, a reasonable person would consider the questions asked (e.g., name, country of birth, citizenship, etc.) to be relevant to an admissibility or customs determination. True, some events or factors might tip the balance in another case. When the custodial conditions become clearly exceptional rather than routine — handcuffs, drawn weapons, administration of Sodium Pentothal, etc. — questions that objectively bear on admissibility might require a Miranda warning. Those circumstances, however, are not present here and remain to be decided in future eases.
The views expressed in this Point are common ground among the panel members, and are expressed without fear of contradiction.